UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAMIEN DREIS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>DEARBORN NATIONAL LIFE INSURANCE COMPANY, a foreign corporation,<br><br>　　　　Defendant. | Case No. 2:14-cv-00620-MJP<br><br>**DEFENDANT'S MOTIONS *IN LIMINE*** <br><br>NOTE ON MOTION CALENDAR:<br>August 14, 2015 |

## I.　　INTRODUCTION AND RELIEF REQUESTED

Defendant Dearborn National Life Insurance Company ("Dearborn National") moves *in limine* to exclude the following evidence:

1.　　Any testimony by James Healy.

2.　　All evidence, testimony, or argument of counsel about alleged "willful" withholding of wages of Plaintiff Damien Dreis ("Dreis") by Dearborn National, or RCW 49.52.050–.070.

3.　　All evidence, testimony, or argument of counsel about alleged actions or statements of former Dearborn National employee Larry Meitl constituting the actions or statements of Dearborn National.

4.　　All evidence, testimony, or argument of counsel about severance offers made or

**DEFENDANT'S MOTIONS *IN LIMINE*** - 1

Case No. 2:14-cv-00620-MJP

Littler Mendelson, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

severance paid by Dearborn National to any non-party individual.

     5.     All evidence, testimony, or argument of counsel about alleged hearsay statements by Larry Meitl to non-party individuals about the nature or amount of severance payments to be made by Dearborn National.

     6.     All evidence, testimony, or argument of counsel about alleged violations of the policies of Dearborn National or Dearborn National parent company Health Care Service Corporation ("HCSC") by Dearborn National or Dearborn National employees.

     7.     All evidence, testimony, or argument of counsel about Dreis's last day of employment with Dearborn National being any day other than February 4, 2015.

     8.     All evidence, testimony, or argument of counsel about Dreis giving "two weeks' notice" to Dearborn National.

     9.     Any reference to dispositive motions in this case or the Court's rulings thereon.

     10.     The use of deposition transcript or video recording excerpts for any purpose other than impeachment, including during opening statements and closing arguments, with the exception of their use for impeachment, or for truly unavailable witnesses, or of Dearborn National's 30(b)(6) representative's testimony, which may be used for any purpose.

## II.    LCR 7(d)(4) CERTIFICATION

Counsel for the parties conferred in good faith telephonically about every motion *in limine* raised herein on July 23, 2015, and failed to reach agreement upon them. Declaration of Thomas P. Holt ("Holt Decl. at ¶ 2).

## III.    FACTS

### A.    General Background

In this case, Dreis alleges that Dearborn National is liable to him for failing to pay him severance as part of Dearborn National's 2013 reduction-in-force ("RIF"), even though Dreis resigned his employment at Dearborn National to work for a competitor, Guardian Life Insurance Company, "effective today" on February 4, 2013, more than two weeks before any

**DEFENDANT'S MOTIONS *IN LIMINE* - 2**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

comparable employees at Dearborn National were extended severance offers as part of the RIF. According to Dreis, Dearborn National should be required to pay him severance regardless of his voluntary resignation from the company because his former supervisor, Larry Meitl, allegedly told him that any severance that Dearborn National might offer as part of the RIF would be "minimal" or "two weeks max." *See generally* Dearborn National's Motion for Summary Judgment (ECF No. 15) at 7:4–10:5. Mr. Meitl denies ever making any such statement. *Id.*

In Dreis's Complaint, he originally asserted state law claims for (a) breach of contract based on alleged violations by Dearborn National of its policies related to reductions in force (actually, policies of its parent company HCSC applied by Dearborn National); (b) willful wrongful withholding of wages; (c) breach of contractual duty of good faith and faith and fair dealing; (d) fraud; and (e) negligent misrepresentation. *See* Complaint (ECF No. 1-2) at 4–6. In the Court's recent Order on the parties' cross-motions for summary judgment, the Court dismissed Dreis's claims for breach of contract, breach of the contractual duty of good faith and fair dealing, and for willful wrongful withholding of wages. (ECF No. 35.)

Accordingly, the only remaining claims in this lawsuit are Dreis's claims for fraud and negligent misrepresentation. Each of Dreis's two claims must be proved under the "clear and convincing" evidentiary standard. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996); *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 182, 876 P.2d 435 (1994).

The details surrounding Dreis's remaining claims are discussed in depth in Dearborn National's Motion for Summary Judgment and summary judgment Reply (ECF No. 23), and the Court is already familiar with them by virtue of its review of those filings. Dearborn National incorporates those filings by reference here and will not repeat them.

### B. Facts Related to Plaintiff's Witness James Healy

Dreis identified witness James Healy in his initial disclosures in this case. Holt Decl., Ex. A, at 3. Accordingly, on January 26, 2015, Dearborn National noticed the deposition of Mr. Healy, Ex. B to Holt Decl., and issued a valid subpoena for Mr. Healy to appear to be deposed

**DEFENDANT'S MOTIONS *IN LIMINE* - 3**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

via videoconference at defense counsel's Denver offices on February 4, 2015. Holt Decl., Ex. C. This subpoena was validly served on January 27, 2015. Ex. D to Holt Decl.

On January 30, 2015, Mr. Healy contacted defense counsel and requested that the date of his deposition be moved, as he had a previously scheduled matter on February 4, 2015. Ex. E to Holt Decl. That same day, the defense counsel contacted Mr. Healy and offered to reschedule his deposition to February 16, 2015, to which Mr. Healy responded the following day, stating that that date would work for him. Ex. F to Holt Decl.

Subsequently, defense counsel was informed by counsel for Mr. Dreis that they could not be available for depositions on February 16, 2015, or indeed on any day during that week. Holt Decl., ¶ 9. Accordingly, on February 2, 2015, defense counsel again contacted Mr. Healy and requested to reschedule his deposition, this time for Friday, February 6, 2015. *Id.*; Holt Decl., Ex. G. The following day, defense counsel sent a follow-up email to Mr. Healy, requesting that he respond. Ex. H to Holt Decl.

That same day, the legal assistant for defense counsel contacted Mr. Healy by telephone. During their telephone conversation, Mr. Healy agreed to appear for his deposition on the rescheduled date of February 6, 2015, at 3:30 p.m. MST, and further agreed to accept service of an amended notice of deposition and amended deposition subpoena via email. Ex. I to Holt Decl. Defense counsel subsequently served Mr. Healy with an amended deposition subpoena compelling his attendance at his deposition on February 6, 2015, Ex. J to Holt Decl., and also served opposing counsel and Mr. Healy with an amended notice of deposition for that date and time. Ex. K to Holt Decl.

Notwithstanding his agreement to appear to be deposed on February 6, 2015, and his express acceptance of service of a proper deposition subpoena for that date, when the time for his deposition arrived, Mr. Healy simply failed to appear as scheduled. Holt Decl., ¶ 14. When contacted, the sole explanation that Mr. Healy had for failing to appear as compelled by the subpoena issued to him was that he had "lost [his] phone." *Id.* at ¶ 15.

**DEFENDANT'S MOTIONS *IN LIMINE* - 4**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Defense counsel subsequently attempted to reschedule a date for Mr. Healy's deposition with Plaintiff's counsel, but was unable to find a mutually available time either prior to or soon after the discovery cut-off in this case, which was February 16, 2015 (the parties had depositions scheduled in Chicago throughout the week of February 9, 2015, and Plaintiff's counsel had previously represented that they could not be available for any purpose during the week of February 16, 2015). *Id.* at ¶ 16.

Dispositive motions in this case were due to be filed by March 2, 2015. (ECF Nos. 10, 13.) Accordingly, defense counsel was unable schedule a time to conduct the deposition of James Healy prior to the filing of the parties' cross-motions for summary judgment. Holt Decl. at ¶ 17. Notwithstanding this, accompanying his Partial Motion for Summary Judgment, Dreis included a declaration of Mr. Healy. Ex. L to Holt Decl. (ECF No. 19.)

The purpose of this declaration was not to illuminate or discuss any facts that are actually relevant to Mr. Dreis's claims, currently existing or otherwise, however. Rather, in this declaration, Mr. Healy merely discussed statements that he alleges Mr. Meitl made about severance that *he* (Mr. Healy) might expect to receive if he remained employed at Dearborn National through Dearborn National's 2013 RIF, namely, that Mr. Meitl supposedly told him that such a severance offer to Mr. Healy would be "insignificant." *Id.* at ¶ 4.

## IV. AUTHORITY AND ARGUMENT

The Court has broad discretion to make "evidentiary rulings conducive to the conduct of a fair and orderly trial." *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). For the reasons discussed below, the Court should exercise its discretion to exclude the categories of evidence and testimony set forth in the introduction of these motions.

### A. Testimony by James Healy Is Improper Given Healy's Failure to Appear at His Deposition, Would Be Unfairly Prejudicial, and Is Irrelevant

Plaintiff indicated in his pretrial statement that he intends to call former Dearborn National employee James Healy as a witness who "will testify" in this case. Mr. Healy should

**DEFENDANT'S MOTIONS *IN LIMINE*** - 5

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

be excluded from testifying. As detailed above, Mr. Healy failed to comply with a properly served subpoena to appear to be deposed by counsel for Dearborn National. Accordingly, under Federal Rule of Evidence 403, any probative value that Mr. Healy's testimony might have would be substantially outweighed by unfair prejudice to Dearborn National, given that, notwithstanding its compliance with Federal Rule of Civil Procedure 45 and this Court's discovery schedule, Dearborn National was precluded from exploring Mr. Healy's testimony by virtue of Mr. Healy's failure to comply with a properly issued deposition subpoena.

Moreover, testimony by Mr. Healy would also be unfairly prejudicial to Dearborn National in that his testimony fails to meet the relevancy standard of Federal Rule of Evidence 401. It has no probative value to any fact put at issue by Dreis's claims, yet is intended to unfairly cast Dearborn National in an unfavorable light. Specifically, as demonstrated by Mr. Healy's declaration offered in support of Dreis's motion for partial summary judgment, the *only* reason that Dreis seeks to have Mr. Healy testify is because, prior to the 2013 reduction-in-force at Dearborn, Larry Meitl allegedly told Mr. Healy that any severance Mr. Healy might receive from Dearborn National would be "insignificant." Ex. L to Holt Decl. (ECF No. 19), ¶¶ 4–5.

Even if this were true, it has nothing to do with any of Mr. Dreis's potentially remaining claims in this case. What Mr. Meitl might or might not have said to Mr. Healy does not make it more or less likely that the completely independent statements that Mr. Dreis claims Mr. Meitl made *to him* actually occurred. It has no bearing on such alleged statements to Dreis at all. And, statements made to Mr. Healy are of no consequence to the determination of Dreis's claims, which relate solely to what Dreis asserts Mr. Meitl said to him. *See* Fed. R. Evid. 401. Indeed, the *only* reason Dreis seeks to introduce the testimony of Mr. Healy is to confuse the jury with the improper and logically fallacious inference that because Mr. Meitl allegedly made statements to Mr. Healy about severance payments, he also made such statements to Dreis.

The Court should exclude Mr. Healy from testifying at trial.

**DEFENDANT'S MOTIONS *IN LIMINE* - 6**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

**B. The Court Should Exclude Evidence or Testimony about Alleged "Willful" Violations of Washington's Wage Statutes**

The Court has now dismissed Dreis's claim for willful withholding of wages in violation of Washington law. (ECF No. 35.) Accordingly, Dreis should not be permitted to introduce evidence, and his counsel should not be permitted to present argument, about any aspect of the statutes under which such a claim was raised, RCW 49.52.050–.070, or about any alleged "willfulness" or "wrongful withholding" of wages that Dreis claims to be owed.

**C. Evidence Seeking to Portray Actions of Statements by Larry Meitl as Those of Dearborn National Is Legally Erroneous and Unfairly Prejudicial**

Dreis should not be allowed to present testimony or argument of counsel to the effect that unilateral actions taken by, and statements made by, former Dearborn National employee Larry Meitl were actions taken by, or statements made by, Dearborn National as a corporation. Allowing such testimony or argument would confuse the jury by conflating the unauthorized and inaccurate alleged statements and actions of a single individual, Mr. Meitl, with those of Dearborn National as a company.

The first reason that the Court should disallow such confusing and improper testimony and argument is because, as a factual matter, alleged statements by Mr. Meitl regarding the amount of severance that Dreis might expect as part of the RIF were neither based on actual knowledge on the part of Mr. Meitl, nor were such statements authorized by Dearborn National. To date, Dreis has been able to present *no* evidence that Mr. Meitl was so authorized.[1] Accordingly, allowing Dreis or his counsel to simply *assume* agency on the part of Dearborn National by phrasing or describing the actions of Mr. Meitl as those of Dearborn National is improper, and is simply legally erroneous.

---

[1] In the Court's Order on the parties' cross-motions for summary judgment, viewing the evidence in the light most favorable to Dreis, the Court concluded that the jury could find from circumstantial evidence that Mr. Meitl had knowledge of Dearborn National's severance calculations at the time Dreis alleges he made statements about potential severance amounts Dreis might receive. However, notwithstanding the information Dreis points to as such circumstantial evidence, Mr. Meitl has steadfastly denied any knowledge of severance calculations prior to receiving his own severance offer, and Dreis has put forward no evidence that contradicts this unrefuted testimony.

**DEFENDANT'S MOTIONS *IN LIMINE* - 7**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Further, allowing Dreis to present the actions Mr. Meitl as being equivalent to (or simply being the actions of) Dearborn National would unfairly prejudice Dearborn National in the eyes of the jury. Such statements are nothing more than implicit legal argument by counsel as to the disputed fact of Mr. Meitl's agency, and as such, have no probative value. At the same time, they are likely to confuse and mislead the jury as to what Dearborn National's actual actions were, causing unfair prejudice to Dearborn National. *See* Fed. R. Evid. 403.

Dearborn National is aware that the Court has ruled that Mr. Meitl's agency with respect to his alleged statements to Dreis is a disputed issue for trial. (*See* ECF No. 35.) But Dreis and his counsel should not be allowed to assume that which they are required to prove—the fact of actual or apparent authority on the part of Mr. Meitl to make representations on Dearborn National's behalf regarding the nature or amount of severance payments to be made as part of the 2013 RIF.

The Court should direct Dreis and his counsel not to refer to the statements or actions of Mr. Meitl as statements or actions by Dearborn National itself.

### D. Evidence about Severance Offered or Paid to Third Parties Is Irrelevant and Unfairly Prejudicial

Dreis should be prohibited from presenting evidence or argument about what third parties received as severance from Dearborn National as part of the 2013 RIF. First, such evidence has no relevance to Dreis's only extant claims, i.e., that Dearborn National was somehow negligent or committed fraud by failing to pay Dreis severance even though he knowingly and intentionally resigned to work for a competitor more than two weeks before Dearborn Natioanl made any severance offers to employees as part of the 2013 RIF.

Liability in tort for negligence resulting from the *affirmative* misrepresentation as to an existing fact may be found only if a person "who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." Restatement (Second) of

**DEFENDANT'S MOTIONS *IN LIMINE* - 8**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Torts ("Restatement") § 552(1). Payments made by Dearborn to third parties as consideration for a release for liability as part of its 2013 RIF have *no relevance whatsoever* on any element of this legal test. Fed. R. Evid. 401.

Similarly, liability in tort for negligent *failure to disclose* an existing fact can only be found "in a quasi-fiduciary relationship, when (1) a special relationship of trust and confidence exists between the parties; (2) one party relies upon the superior specialized knowledge and experience of the other; (3) the seller has knowledge of a material fact unknown to the buyer; and (4) there exists a statutory duty to disclose." *Richland Sch. Dist. v. Mabton Sch. Dist.*, 111 Wn. App. 377, 386, 45 P.3d 580 (2002). Again, payments made by Dearborn National to third parties have absolutely nothing to do with any of these necessary legal elements, and have no value in making their existence any more or less likely. Fed. R. Evid. 401.

Finally, with respect to Dreis's fraud claim, "[t]he nine elements of fraud are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). Again, payments to third parties have no bearing on any of these elements. Fed. R. Evid. 401.

At the same time, the introduction of evidence related to severance amounts paid to third parties would create a very real risk of unfair prejudice to Dearborn National, insofar as it could create (and could be intended to create) unwarranted sympathy on the part of jurors that has no bearing on the merits of the issues at trial. Specifically, such evidence could create the impression that because affected individuals who *were* employed by Dearborn National at the time of the RIF were provided with severance payments, Dreis should *also* have received such a payment—even though Dreis knew perfectly well that his resignation would disqualify him from receiving one.

**DEFENDANT'S MOTIONS *IN LIMINE* - 9**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

The Court should exclude evidence and argument of severance offered or paid to individuals who are not party to this lawsuit.

### E. The Court Should Exclude Evidence about Purported Statements by Larry Meitl to Third Parties Regarding Severance as Prohibited Hearsay

Based on Dreis's deposition and statements by his counsel, Dearborn National believes that Dreis may seek to testify, or otherwise introduce evidence, that purports to convey what Larry Meitl may have said to third parties about severance that they might expect to receive as part of the 2013 RIF. This would be testimony not directly by Dreis about what Mr. Meitl purportedly said to *him*, but rather testimony about supposed statements that Mr. Meitl made to third party individuals that were in turn conveyed to Dreis *by those individuals*. As such, it would be offered in order to prove the truth of the matter asserted (i.e., that Mr. Meitl made certain statements to the declarant(s)), and thus is classic hearsay for which no exception applies. Fed. R. Evid. 801(c)(2). In particular, it would not even arguably fall under the exception for statements of a party opponent, because the declarant would not be Mr. Meitl, but rather the third party to whom Mr. Meitl supposedly spoke.[2] Such testimony is inherently unreliable, as Dearborn National had no way to explore its veracity with the undisclosed potential declarants.

The Court should exclude any proffered hearsay evidence about what Larry Meitl (or anyone else) made to non-testifying third parties about the nature or amount of severance payments to be made by employees affected by the 2013 RIF.

### F. Evidence about Purported Violations of HCSC Policies by Dearborn National Is Irrelevant to Any Extant Claim and Is Unfairly Prejudicial

Through the course of this litigation, Dreis has sought to claim that Dearborn National deviated from its policies governing reductions in force and the payment of severance benefits to

---

[2] Dearborn National contends that *no* statement by Larry Meitl can be considered to be a statement of a party opponent, given that Mr. Meitl had neither actual nor apparent authority to make representations about the nature or amount of severance Dearborn might offer to employees affected by the 2013 RIF. The Court need not address this issue in ruling on this motion *in limine*, however, as Mr. Meitl would not be the relevant declarant. *See* Fed. R. Evid. 801(b).

**DEFENDANT'S MOTIONS *IN LIMINE* - 10**

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

1 employees affected by such reductions.  To the extent Dreis had extant claims for breach of

2 contract or breach of the contractual duty of good faith and fair dealing based on the alleged

3 contractual nature of Dearborn National's employment policies, such arguments made sense.

4 However, Dreis has admitted that the claims of this nature originally asserted in his Complaint

5 are without merit, and the Court has subsequently dismissed them.  (ECF No. 35.)

6      Indeed, when deposed, Dreis admitted that he had never even seen one policy that he

7 claimed in his Complaint Dearborn National violated until more than 10 months after he

8 resigned, when counsel for HCSC sent it to his lawyers in response to a demand letter.  *See*

9 Defendant's Motion for Summary Judgment (ECF No. 15) at 13:11–14:3.  He also admitted that

10 he had never seen the other policy that he alleged Dearborn violated *until the day of his*

11 *deposition*.  *Id.* at 14:3–10.  And, he also admitted that, during his employment, he read the

12 prominent disclaimer applicable to all Dearborn National and HCSC policies explicitly making

13 clear that none of those policies was contractual in nature.  *Id.* at 14:11–24.

14      The only other conceivable relevance that such alleged policy violations might have had

15 to this case was Dreis's convoluted argument that, even though he resigned "effective today" on

16 February 4, 2013, he nonetheless somehow continued to be a Dearborn National employee until

17 February 19, 2013, the date Dearborn National extended severance offers to employees affected

18 by the 2013 RIF.  This argument was made in relation to Dreis's claim that he should be able to

19 seek double damages for alleged "willful" withholding of wages under RCW 49.52.050–.070.

20 But, the Court has now rejected this argument (ECF No. 35 at 15–16), and has dismissed Dreis's

21 claim for unlawful wage withholding.  Accordingly, Dearborn National's supposed violations of

22 its internal policies have no relevance to any remaining claim in this action.

23      At the same time, testimony or argument related to supposed violations by Dearborn

24 National of its internal policies poses a very real risk of unfairly prejudicing the jury.

25 Specifically, such arguments could give the jury a mistaken and misleading understanding that

26 Dearborn National unfairly administered the 2013 RIF, and create negative impressions of

**DEFENDANT'S MOTIONS *IN LIMINE*** - 11

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Dearborn National on that basis. In addition to having no basis in fact, and being highly and unfairly prejudicial to Dearborn National, such argument and testimony is, again, irrelevant to any extant claim in this case. Dreis was not employed by Dearborn National when the RIF was administered—he had voluntarily and intentionally resigned more than two weeks prior. Thus, Dearborn's handling of the RIF itself has nothing to with Dreis or his claims.

Accordingly, argument and evidence related to supposed violations of policy by Dearborn National have no relevance to any issue of consequence to the determination of this action, and should be excluded as irrelevant and unfairly prejudicial. Fed. R. Evid. 401, 402, 403.

### G. Dreis Should Not Be Permitted to Testify Contradicting His Unambiguous Admission that His Last Day at Dearborn National Was February 4, 2015

When deposed, Dreis expressly admitted that it had always been his understanding that his last day of work at Dearborn National had been February 4, 2013. *See* Defendant's Motion for Summary Judgment (ECF No. 15) at 12:13–18. Indeed, Dreis admitted that as of February 5, 2013, he had already started a new job at Guardian Life Insurance Company. *Id.* Dreis should not now be allowed to testify in direct contradiction of this unambiguous prior testimony. In addition to being a directly contradictory to his statements made under oath, testimony or argument of counsel to the effect that Dreis somehow remained employed by Dearborn National beyond his final day of work is irrelevant to any extant claim. Specifically, again, the unsupported claim that Dreis someone remained a Dearborn National employee after he resigned "effective today" on February 4, 2013, related solely to Dreis's unfounded theory offered in support of his willful wage withholding claim. The Court has rejected that theory, and dismissed that claim. Moreover, this testimony and argument has the potential to confuse to the jury, insofar as it could give the erroneous impression that some right by Dreis to a severance payment from Dearborn National could have arisen for some reason other than the claims still at issue.

The Court should exclude all evidence and testimony to the effect that Dreis's continued his employment at Dearborn National beyond February 4, 2013. Fed. R. Evid. 401, 402, 403.

**DEFENDANT'S MOTIONS *IN LIMINE* -** 12

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

### H. Dreis Should Not Be Permitted to Testify that He Gave "Two Weeks' Notice" When that Purported Notice Was Given After His Last Day of Work

For reasons identical to those set forth above in relation to Dreis's last day at Dearborn National being any day other than February 4, 2013, the Court should also exclude all testimony and argument that Dreis gave "two weeks' notice" when he sent a revised resignation letter to Larry Meitl on February 5, 2013, from his work computer at Guardian Life Insurance Company. Fed. R. Evid. 401, 402, 403.

### I. The Court Should Exclude Evidence Related to the Parties' Dispositive Motions and the Court's Ruling on Those Motions

The Court should exclude any reference to the fact that Dearborn National filed a Motion for Summary Judgment, as well as evidence of Plaintiff's Motion for Partial Summary Judgment, or that the Court has denied or granted these motions, or any part thereof. Any such evidence is wholly irrelevant to any of the extant claims in the case and would be highly prejudicial insofar as it could give the erroneous impressions to jurors unfamiliar with the summary judgment standard that the Court's failure to dismiss Dreis's claims in their entirety means that those claims somehow have legal merit. Fed. R. Evid. 401, 402, 403.

### J. Plaintiff's Counsel Should Not Be Permitted to Use Deposition Excerpts Other than From Dearborn's Rule 30(b)(6) Representative

Plaintiff's counsel has indicated that they intend to designate deposition testimony for use at trial. Plaintiff's counsel's use of excerpts of depositions in this case should be limited to (a) depositions of witnesses who are truly unavailable to testify in person, and (b) those used solely for impeachment, or (c) use of the deposition of Dearborn's Rule 30(b)(6) corporate representative, which may be used for "any purpose." In particular, use of video recordings of depositions outside of these categories, including use of such recordings during opening statements and closing arguments, is not consistent with the Federal Rules of Civil Procedure, has the potential to confused and mislead the jury, and should be restricted.

Federal Rule of Civil Procedure 32(a) sets forth the specific "conditions" under which

**DEFENDANT'S MOTIONS *IN LIMINE*** - 13

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

"all or part of a deposition may be used against a party" at "a hearing or trial." Under that rule, in order to use a deposition recording at trial, the party seeking to use the deposition must demonstrate either that the use of the deposition is for impeachment, that the deposition is of a party, agent, or designee, or that the deponent is unavailable to testify at trial. Fed. R. Civ. P. 32(a)(1)(C), (a)(2)–(4). "The preference for live testimony at trial rather than deposition testimony as a substitute is uniformly stressed in case law." *Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 522 (D. Utah 2003). Indeed, where an adverse party indicates that they will make available a deponent to testify live at trial, even if that deponent lives outside of the reach of the subpoena power, it is inappropriate to allow the introduction of testimony by deposition rather than by requiring live examination of the witness. *Id.* at 524.

Here, Dearborn National has no objection to the use of deposition excerpts for impeachment purposes. Such use is consistent with Rule 32. Dearborn National also has no objection to the use of excerpts of the transcript of its Rule 30(b)(6) corporate representative's deposition, which Rule 32(a)(3) provides may be used for "any purpose." And, if deponents are truly unavailable to be examined in person at trial, the use of deposition excerpts would likely be appropriate in that instance as well.

What is not appropriate, however, and what the Court should not permit, is the use by Dreis's counsel of highly edited excerpts of deposition transcripts or video recordings for purposes not identified in Rule 32, including during opening statements and closing arguments. To the extent Dreis's counsel intend to utilize excerpts of deposition recordings of deponents who are otherwise available to testify in person during their case-in-chief, such use is inconsistent with the federal civil rules and the case law interpreting them. To the extent Plaintiff's counsel intends to use deposition excerpts, including video recording excerpts, in opening statements or closing arguments, such use has the potential to mislead the jury by removing the context for questions, answers, or objections of counsel, and thus should be

**DEFENDANT'S MOTIONS *IN LIMINE*** - 14

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

prohibited under Federal Rule of Evidence 403.  Further, such use is not consistent with Federal Rule of Evidence 106, insofar as defense counsel will not have the ability to determine in advance which portions of deposition transcripts or recordings Dreis's counsel would select for inclusion in opening statements or closing arguments, and thus would be unable to properly identify other portions of the transcripts or recordings that in fairness should also be considered, as required by the rule.

The Court should prohibit the use of deposition excerpts at trial, including video recording excerpts, other than (a) for impeachment, (b) the deposition recording of Dearborn National's Rule 30(b)(6) designees, and (c) upon a showing by Dreis's counsel that the deponent for whom excerpts are sought to be presented is truly unavailable to testify in person at trial.

## V. CONCLUSION

Based on the foregoing, Dearborn National respectfully requests that the Court exclude evidence of the types set forth above.  A proposed order accompanies these motions.

Dated: July 27, 2015

*/s/ Thomas P. Holt*
Thomas P. Holt, WSBA No. 39722
tholt@littler.com
James G. Zissler, WSBA No. 30287
jzissler@littler.com
**LITTLER MENDELSON, P.C.**
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
Telephone:	206.623.3300
Facsimile:	206.447.6965

Attorneys for Defendant
DEARBORN NATIONAL LIFE
INSURANCE COMPANY, a foreign
corporation

**DEFENDANT'S MOTIONS *IN LIMINE* -** 15

Case No. 2:14-cv-00620-MJP

Littler Mendelson, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Ste. 3200, Seattle, WA 98101. I hereby certify that on July 27, 2015, I electronically filed the foregoing **DEFENDANT'S MOTIONS *IN LIMINE*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Honorable Marsha J. Pechman and to the following:

**Attorneys for Plaintiff**

**Michael S. Wampold, WSBA #26053**
**Mallory C. Allen, WSBA #45468**
**PETERSON WAMPOLD ROSATO LUNA KNOPP**
**1501 Fourth Ave., Suite 2800**
**Seattle, WA 98101-1609**

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated July 27, 2015

          */s/ Thomas P. Holt*
          Thomas P. Holt
          THolt@littler.com
          **LITTLER MENDELSON, P.C.**

Firmwide:134885613.3 075686.1002

**DEFENDANT'S MOTIONS *IN LIMINE*** - 16

Case No. 2:14-cv-00620-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300