Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DAMIEN DREIS,

    Plaintiff,

v.

DEARBORN NATIONAL LIFE INSURANCE COMPANY, a foreign corporation,

    Defendant.

NO. 2:14-CV-00620-MJP

PLAINTIFF'S TRIAL BRIEF

Trial Date: September 8, 2015

## I. INTRODUCTION

This lawsuit arises out of a large, companywide Reduction in Force conducted by Defendant Dearborn National Life Insurance Company in late 2012 and early 2013. Plaintiff Damien Dreis—one of Dearborn's top salespeople nationwide—was one of the many employees who was slated to lose his job in this RIF.

On January 7, 2013, Mr. Dreis was told by Larry Meitl—Dearborn's Regional Vice President of the West Region and Mr. Dreis's direct supervisor—that his job was being officially eliminated. Mr. Meitl encouraged Mr. Dreis to take any job interviews available and told him that if Dearborn gave any severance, it would be minimal and not more than two weeks' pay. That same message was communicated to Mr. Dreis throughout the month of January, during which Mr. Dreis asked on numerous occasions whether Dearborn would in fact be offering any severance and what the severance plan would entail. He was given the same answer. Faced with

PLAINTIFF'S TRIAL BRIEF- 1
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

no other financially viable options, Mr. Dreis gave his two weeks' notice on February 4, 2013.

Unbeknownst to Mr. Dreis, Dearborn had specific RIF and severance payment policies in place that required Dearborn to comply with the following:

- "A RIF separation packet shall be prepared for affected fulltime employees…"

- "After the affected employee has been notified *by management* of his/her or her job elimination, Employee Services shall present the RIF separation packet to affected employees."

- "During presentation of the RIF package to RIF employees, Employee Services will specifically discuss … Separation Benefits."

- "At the conclusion of the presentation, Employee Services will provide the employee with copies of the above referenced documentation."

Dearborn's Separation Policy provided that the severance package for a Sales Manager with the equivalent tenure and pay as Mr. Dreis would include a year of base pay and a year of incentive bonus pay. For Mr. Dreis, that amounted to $607,779.84.

Despite being told in no uncertain terms on January 7 *by management* that his job was now eliminated and despite repeatedly seeking information about severance, Dearborn never provided the RIF separation packet to Mr. Dreis and never discussed the *actual* separation benefits as was required by Dearborn's established RIF policy. Instead, Dearborn *intentionally* kept the severance information from its employees.

Dearborn does not dispute that Mr. Dreis would have been entitled to a severance of $607,779.84 had he been an employee on February 19, 2013—the day Dearborn distributed its RIF packets. Defendant's position is simply that because Mr. Dreis "voluntarily resigned," he is not entitled to his severance.

Plaintiff will prove at trial that Dearborn's actions constitute negligent misrepresentation—both through affirmative misrepresentation and failure to disclose—and fraud, and that because Dearborn withheld Mr. Dreis's wages, Mr. Dreis is entitled to attorneys' fees and costs under RCW 49.46.090 and/or RCW 49.48.030.

PLAINTIFF'S TRIAL BRIEF- 2
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

## II. LEGAL AUTHORITY

**A. Washington law applies to Plaintiff's claims against Dearborn.**

A federal court sitting in diversity must apply state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Washington law applies to Plaintiff's negligent misrepresentation and fraud claims against Continental.

### i. Negligent Misrepresentation.

Under Washington law, a negligent misrepresentation claim can be based on an affirmative misstatement, a failure to disclose information, or both. *See* Restatement (Second) of Torts, § 552 (affirmative misrepresentation) *and* Restatement (Second) of Torts, § 551 (failures to disclose information). Plaintiff will show that Dearborn is liable for both forms of negligent misrepresentation. Dearborn is liable for its affirmative misrepresentation that the severance pay would be "minimal, two weeks maximum" and its negligent failure to disclose that Mr. Dreis was in fact entitled to a year's worth of salary.

*Affirmative Misrepresentations*. The Washington Pattern Jury Instructions lay out a six-element test for affirmative negligent misrepresentation. 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 165.01 (6th ed.). A plaintiff must prove by clear, cogent, and convincing evidence the following: (1) the defendant supplied information for the guidance of others in their business transactions that was false; (2) defendant knew or should have known that the information was supplied to guide plaintiff in business transactions; (3) defendant was negligent in obtaining or communicating the false information; (4) plaintiff relied on the false information; (5) plaintiff's reliance was reasonable; and (6) the false information proximately caused plaintiff's damages. *Id*; Restatement (Second) of Torts, § 552(1) ("One who, in the course of his … employment …supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.").

PLAINTIFF'S TRIAL BRIEF- 3
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

The evidence elicited at trial will show (1) the undisputed fact that the information provided—that the severance would be approximately two weeks—was false; (2) Dearborn should have known—and in fact, knew—that Mr. Dreis was using the information regarding severance to guide him in his decision as to whether or not he should search for a new job; (3) it was unreasonable and/or incompetent for Mr. Meitl to represent critical employment facts without even attempting to find the actual answer; (4) Mr. Dreis relied on the misrepresentations; (5) it was reasonable for Mr. Dreis to rely on these representations where they came from his boss and a Dearborn Vice President; and (6) the misrepresentation proximately caused Mr. Dreis's damages because had Mr. Dreis been told the truth—that the severance was not minimal or insignificant or two weeks maximum, but was in fact substantial—he would not have sought work elsewhere until after February 19.

*Failure to Disclose*. Dearborn's failure to apprise Mr. Dreis of the existing severance policy or the fact Mr. Dreis would receive a year's worth of salary is an additional form of negligent misrepresentation. Washington law imposes liability for failure to disclose where: "(1) defendant had a duty to disclose the following information: [the truthful amount of the severance payment owed]; (2) defendant did not disclose this information; (3) defendant was negligent in failing to disclose the information; and (4) plaintiff was damaged by the failure to disclose this information." 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 165.02 (6th ed.).

Here, each element is easily satisfied. First, Dearborn had a duty to follow its own policies and disclose the amount of Mr. Dreis's severance when it informed him on January 7 that his job was being eliminated. *See* WPI 165.03(b)-(e). Second, there is no dispute that Dearborn did not disclose any information concerning the RIF policy, severance policy, or the actual amount of the severance. In fact, it is undisputed that Dearborn intentionally kept its severance policy from its employees. Third, Dearborn's failure to advise Mr. Dreis of the fact that he was entitled to well over half a million dollars, when policies existed that plainly spelled out this entitlement, was plainly negligent. Fourth, there is no dispute as to Mr. Dreis's damages;

PLAINTIFF'S TRIAL BRIEF- 4
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

had Dearborn informed Mr. Dreis of his rights, he would have stayed employed with Dearborn through February 19 and would have been entitled to $607,779.84.

### ii. Fraud.

Under Washington law,

> "Fraud", in its general sense, is comprised of anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence resulting in damage to another. "Fraud" has been characterized as a generic term embracing every means that human ingenuity can invent to enable one person to gain an unfair advantage over another and includes false suggestions as well as suppression of material truth.

16 Wash. Prac., Tort Law And Practice § 18.2 (3d ed.) (footnotes omitted).

Washington subscribes to the nine elements of common law fraud: (1) representation of existing fact; (2) its materiality; (3) its falsity; (4) defendant's knowledge that the representation was false or ignorance of its truth; (5) plaintiff's ignorance of the falsity of the representation; (6) intent that plaintiff would act upon the representation; (7) plaintiff's right to rely; (8) plaintiff's actual reliance; and (9) resulting damage. *Martin v. Miller*, 24 Wn. App. 306, 308, 600 P.2d 698 (1979); WPI 160.04. Fraud must be proven by clear, cogent and convincing evidence. *Id*. Notably, "[o]ne who is reckless in ascertaining the truth or falsity of his representation is in no better position than one who knows the falsity of his representation. A person cannot make a positive representation that is false and defeat recovery because he did not know it was false, if he made the representation in reckless disregard of whether it was true or false." 16A Wash. Prac., Tort Law And Practice § 19:6 (4th ed.). Washington courts have repeatedly recognized that a defendant need not *know* that the representation was false where it recklessly failed to ascertain the truth. *Maring v. PG Alaska Crab Inv. Co., LLC*, 2006 WL 328400, *2 (W.D. Wash. Feb. 10, 2006); *Engbrecht v. Employment Sec. Dep't*, 132 Wn. App. 423, 429, 132 P.3d 1099 (2006); *Holland Furnace Co. v. Korth,* 43 Wn.2d 618, 622-23, 262 P.2d 772 (1953) ("[I]f a person represents as true material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know his

PLAINTIFF'S TRIAL BRIEF- 5
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

representations were false, or that he believed them to be true."). Here, Dearborn's actions meet all nine elements of fraud.

Mr. Meitl, as an agent of Dearborn, affirmatively misrepresented—directly contrary to Dearborn's presently existing policies—the highly material fact that Mr. Dreis was only entitled to $4,053 when he was actually entitled to $607,779.84. Mr. Dreis had no access to the policies and accordingly, Mr. Dreis had a right to rely, and did in fact rely, on the fact that Mr. Meitl was giving him truthful information. Mr. Meitl's misrepresentations were either knowing or they were entirely reckless—either is sufficient—and there is evidence of both. Mr. Meitl gave Mr. Dreis this information in order for him to act upon it by seeking new employment, and in fact, knew that Mr. Dreis was seeking employment elsewhere based upon these representations. Due to these misrepresentations, Mr. Dreis resigned from Dearborn before collecting the severance he was owed.

**B. Damages.**

Contrary to Dearborn's assertions in the Agreed Pretrial Order, under Washington law, both special *and general* damages are recoverable in fraud and negligent misrepresentation actions. Washington courts have made clear that in addition to recovering economic damages, a plaintiff may recover emotional distress damages in a fraud or negligent misrepresentation claim where a causal relationship is established between the misrepresentation and the emotional harm. *Bloor v. Fritz*, 143 Wn. App. 718, 180 P.3d 805 (2008) (trial court properly awarded emotional distress damages arising out of real estate agent's failure to disclose to purchasers prior use of property as methamphetamine lab); *Nord v. Shoreline Sav. Ass'n,* 116 Wn.2d 477, 805 P.2d 800 (1991) (*"*This court has liberally construed damages for emotional distress as being available merely upon proof of 'an intentional tort'."); *Chapman v. Mktg. Unlimited, Inc.*, 14 Wn. App. 34, 39, 539 P.2d 107 (1975) ("the perpetrator of a fraud is liable to respond in such damages as naturally and proximately resulted from the fraud, and the 'proximate result' rule should be employed in a flexible manner.") (internal citations omitted); *see also* 16A Wash. Prac., Tort

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

Law And Practice § 19:12 (4th ed.); *Sprague v. Frank J. Sanders Lincoln Mercury, Inc*. 120 Cal. App. 3d 412, 174 Cal. Rptr. 608 (5th Dist. 1981) (where an action for deceit is grounded in tort, general damages for mental pain and suffering may be recovered).

Dearborn's reliance on *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 447-48, 815 P.2d 1362 (1991) is misplaced. *Gaglidari* merely holds that "tort damages for emotional distress *caused by breach of an employment contract* are not recoverable." *Id*. at 440 (emphasis added). The court's holding is explicitly limited to contract-based claims, as opposed to those where the plaintiff alleges and proves a tort. In fact, the court cites numerous cases where noneconomic damages *were* permitted where the plaintiff alleged tortious conduct. *Id*. at 441-442. In negligent misrepresentation and fraud cases like this one—as opposed to those based solely upon an employment contract—there is ample authority that a plaintiff is entitled to both economic and noneconomic damages. The jury should be instructed as such.

### C. Withholding or Diverting any Portion of an Employee's Wages—Attorneys' Fees and Costs.

Washington law precludes an employer from withholding or diverting any portion of an employee's wages. RCW 49.48.010. The Washington courts have repeatedly recognized that the "comprehensive scheme" of wage and hour statutes shows the Legislature's "strong policy in favor of payment of wages due employees" and that all of these statutes are to be liberally construed to effect that purpose. *Schilling v. Radio Holdings, Inc.,* 136 Wn.2d 152, 157, 961 P.2d 371 (1998); *Bates v. City of Richland*, 112 Wn. App. 919, 940, 51 P.3d 816 (2002). A liberal construction requires that the provision's coverage be liberally construed in favor of the employee and that its exceptions be narrowly defined. *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett,* 146 Wn.2d 29, 34, 42 P.3d 1265 (2002) (citing *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees,* 130 Wn.2d 401, 407, 924 P.2d 13 (1996)). In line with those policies, the courts have held that severance is a form of wages. RCW 49.48.082(10) ("wage" is any "compensation due to an employee by reason of employment,…"); *Barrett v. Weyerhaeuser Co.*

PLAINTIFF'S TRIAL BRIEF- 7
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

*Severance Pay Plan*, 40 Wn. App. 630, 633, 700 P.2d 338 (1985) (Severance is "a means of recompense for the economic exigencies and privations and detriments resulting from the permanent separation of the employee from service ... In a real sense it is remuneration for the service rendered during the period covered by the agreement."); *Moore v. Blue Frog Mobile, Inc.*, 153 Wn. App. 1, 221 P.3d 913 (2009) (wage statutes encompass withheld severance payments); *Durand v. HIMC Corp.*, 151 Wn. App. 818, 833, 214 P.3d 189 (2009) (same); *see also Gresham v. Lumberman's Mut. Cas. Co.*, 426 F. Supp. 2d 321 (D. Md. 2005), aff'd, 2006 WL 752182 (4th Cir. 2006) (severance pay constitutes "wages"). The severance payment withheld from Mr. Dreis here is form of wage, and therefore, falls under the "comprehensive" scheme of wage statutes.

Under RCW 49.48.030, where an employee is successful in a claim for any unpaid wages, the court must order recovery of reasonable attorney's fees against the employer unless the employer admits to owing an equal or greater amount in wages. RCW 49.48.030 ("In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer").

> [A]wards for attorney fees under RCW 49.48.030 are not limited to judgments for wages or salary earned for work performed, but, rather, [] attorney fees are recoverable under RCW 49.48.030 whenever a judgment is obtained for any type of compensation due by reason of employment.

*Bates v. City of Richland*, 112 Wn. App. 919, 940, 51 P.3d 816 (2002) (internal citations omitted); *see also Richey v. MetaXpert, LLC*, 2011 WL 2888612, at *4 (E.D. Wash. July 15, 2011). Similarly, in *Cameron v. Neon Sky, Inc.*, 41 Wn. App. 219, 222-23, 703 P.2d 315 (1985), the court recognized that "it [is] unlawful for an employer to withhold or divert any portion of an employee's wages" and that even where the withholding of wages is neither intentional nor willful and the employer is not liable for double damages, an employer who withholds *any* wages due to an employee violates RCW 49.48.010 and is liable for the amount owed plus attorney's

PLAINTIFF'S TRIAL BRIEF- 8
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

fees. *Id* at 223.

Here, putting aside any willfulness or intent, Dearborn impermissibly withheld $607,779.84 in wages from Mr. Dreis in direct violation of RCW 49.48.010. Accordingly, if the jury concludes that *any* amount of Mr. Dreis's wages were withheld, Mr. Dreis is entitled to attorneys' fees and costs under RCW 49.46.090 and/or RCW 49.48.030.

**D. Mr. Meitl, Ms. Kozlowski, Mr. Burghard, and Mr. Griffin are speaking agents of Dearborn and, therefore, their deposition testimony may be used by Plaintiff in any manner at trial.**

Fed. R. Civ. P. 32(a)(3) (*Deposition of Party, Agent, or Designee*) provides: "An adverse party may use for any purpose" depositions of an adverse party's "*officer*, *director*, *managing agent*, or *designee under Rule 30(b)(6)* or 31(a)(4)." (emphasis added). Because Mr. Burghard was designated by Dearborn under Rule 30(b)(6), his deposition may be introduced into evidence at trial for any purpose. Similarly, because Mr. Griffin was Dearborn's Senior Vice President, Ms. Kozlowski was its Senior Director of Human Resources, and Mr. Meitl was its Regional Vice President of the West Region, their depositions too can be used for any purpose.

Moreover, regardless of their titles, each of the above witnesses are also properly considered "managing agents" of Dearborn. The test as to whether a witness is considered a "managing agent" focuses on the deponent's duties, rather than the title or position held, and the functions performed in furthering the party's activities and interests. *Young & Associates Pub. Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 523 (D. Utah 2003). Numerous courts have found that although a particular employee may not be a "higher-up managing agent in the course of his everyday duties," where he is a managing agent on the subject matter at issue, that is sufficient. *Botell v. United States*, 2013 WL 360410, at *6 (E.D. Cal. Jan. 29, 2013); *see also Kolb v. A. H. Bull S. S. Co.*, 31 F.R.D. 252, 254 (E.D.N.Y. 1962) (employee found to be managing agent because even though he was under a higher authority, he had authority concerning the subject matter of the litigation); *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) (finding employee managing agent because she was only

PLAINTIFF'S TRIAL BRIEF- 9
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

employee with knowledge of events precipitating lawsuit); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc.,* 176 F.R.D. 75, 79 (W.D.N.Y. 1996) (compelling deposition of retired officer who had unique knowledge of matters involved in litigation); *Calgene, Inc. v. Enzo Biochem,* 1993 WL 645999, at *8 (E.D. Cal. Aug. 23, 1993) (inventor of patent who was also a consultant and advisory board member was managing agent because he had "power regarding the subject matter of the litigation").

Here, Dearborn entrusted each of these witnesses with significant authority. Each had a high-level managerial position, was plainly permitted to act on Dearborn's behalf, and did so extensively; particularly as it pertains to the RIF at issue. Dearborn cannot now argue—after vesting each of these witnesses with an enormous amount of authority—that they are not managing agents. Accordingly, Plaintiff should be permitted to use the depositions of Mr. Meitl, Ms. Kozlowski, Mr. Burghard, and Mr. Griffin for any purpose at trial because each witness is either a Rule 30(b)(6) representative, an officer, a director, or a managing agent of Dearborn.

### E. Dearborn's Rule 30(b)(6) witness testified on behalf of the company and Dearborn should be held to its witness's answers.

Fed. R. Civ. P. 30(b)(6) was designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.). Because a Rule 30(b)(6) witness is testifying on behalf of the organization, the organization must prepare its designee to testify on all information known or reasonably available to it. Fed. R. Civ. P. 30(b)(6). This includes a review of all relevant documents, interviews with current or prior employees, and gathering information from other available sources. *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.,* 262 F.R.D. 552, 558 (D. Mont. 2009) (corporation has an affirmative duty to educate and prepare the witness).

In *MKB Constructors v. Am. Zurich Ins. Co.*, 2014 WL 4792034, at *20 (W. D. Wash. Sept. 25, 2014), the court held that "a party cannot rebut the testimony of its Rule 30(b)(6)

PLAINTIFF'S TRIAL BRIEF- 10
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal." Plaintiff asks that the Court apply the same standard utilized in *MKB Constructors* and the cases cited therein, and limit Dearborn's Rule 30(b)(6) designee's testimony to what was disclosed in the deposition. Dearborn should be precluded from adding to or altering its position on matters that were covered in the Rule 30(b)(6) deposition, absent an "adequate explanation for the rebuttal." *Id.* at *20.

In the event that Dearborn attempts to change or expand its positions at trial, the prejudice to Plaintiff would be severe. Throughout discovery and in preparation for trial, Plaintiff has justifiably relied upon the answers to questions posed in the Rule 30(b)(6) depositions. The very design of the discovery rules, in particular Rule 30(b)(6), is to prevent such surprise and obfuscation.

**F. Use of exhibits during opening statement is proper.**

The purpose of opening statement is "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole, it is not an occasion for argument." *United States v. Dinitz*, 424 U.S. 600, 612 (1976). Use of Power Point presentations during opening statement is proper. *See Smith v. Hawaii,* 2007 WL 1853982 (D. Hawaii 2007)*; U.S. v. Burns,* 298 F.3d 523 (6th Cir. 2002).

Here, Plaintiff intends to use a Power Point presentation during opening statement. Plaintiff's presentation will include exhibits that have been identified in the Agreed Pretrial Order, as well as illustrative exhibits.

//
//
//
//
//

PLAINTIFF'S TRIAL BRIEF- 11
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

| | |
|---|---|
| 1 | DATED this 19th day of August, 2015. |

                                        **PETERSON | WAMPOLD**
                                        **ROSATO | LUNA | KNOPP**

*/s/Mallory C. Allen*
*/s/Michael S. Wampold*
Mallory C. Allen, WSBA No. 45468
Michael S. Wampold, WSBA No. 26053
Attorneys for Plaintiff
1501 4th Avenue, Suite 2800
Seattle, WA 98101
Ph. (206) 624-6800
allen@pwrlk.com
wampold@pwrlk.com

PLAINTIFF'S TRIAL BRIEF- 12
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415

CERTIFICATE OF SERVICE

I hereby certify that on the date shown below I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**Dated**: August 19, 2015

**PETERSON | WAMPOLD**
**ROSATO | LUNA | KNOPP**

*/s/ Elizabeth Chandler*
Elizabeth Chandler, Paralegal
1501 4th Avenue, Suite 2800
Seattle, WA 98101
Ph. 206-624-6800
Email: elizabeth@pwrlk.com

PLAINTIFF'S TRIAL BRIEF- 13
89975

Peterson | Wampold
Rosato | Luna | Knopp
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415